Roland T. MARSHALL et al., Plaintiffs,

Equal Employment Opportunity Commission, Plaintiff-Intervenor,

v.

ELECTRIC HOSE AND RUBBER COMPANY, a Delaware Corporation, et al., Defendants.

Civ. A. No. 4708.

United States District Court, D. Delaware.

Sept. 8, 1975.

Louis L. Redding, Wilmington, Del.,
and Kenneth L. Johnson, Johnson, Smith,

Opara & Erlich, P. A., Baltimore, Md., of counsel, for plaintiffs.

Julia P. Cooper, Acting Gen. Counsel, William L. Robinson, Associate Gen. Counsel, Roberta V. Romberg, Asst. Gen. Counsel, Richard B. Slosberg, Supervisory Trial Atty., and Nan Aron, Trial Atty., Washington, D. C., for plaintiff-intervenor.

R. Franklin Balotti and Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, Del., and Elbert H. Coles and Lawrence Primeaux, Memphis, Tenn., of counsel, for Electric Hose and Rubber Co.

James A. Walsh, Wilmington, Del., and Charles Armstrong and Harley M. Kastner, Akron, Ohio, of counsel, for Unions.

## OPINION

LATCHUM, Chief Judge.

Plaintiffs,[1] black, former employees of Electric Hose and Rubber Company (the "Company") and former members of United Rubber, Cork, Linoleum and Plastic Workers of America and Local 184, United Rubber, Cork, Linoleum and Plastic Workers of America (the "Unions"), have brought this employment and representation discrimination suit against the Company and the Unions under the Labor Management Relations Act of 1947, 29 U.S.C. § 141 *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Currently before the Court are two motions of the plaintiffs. First, they seek certification of this suit as a class action, and, second, they request an order compelling the Company to instruct its industrial relations manager to respond to certain questions asked during his oral deposition.

Plaintiffs' motions will be granted. However, the Court will exercise its Rule 23(c)(4), F.R.Civ.P., powers to divide the class into eight subclasses. First, in order to reduce the possibility of conflict and to facilitate management of the class action generally, separate subclasses have been designated for applicants and employees. Second, because of differences in the appropriate limitation period, claims based on Title VII and claims based on § 1981 and 29 U.S.C. § 141 *et seq.* have been placed in separate subclasses.[2] Third, in defining the subclasses, the Court has determined that it is necessary to separate claims against the Company from claims against the Unions because of the possibility that some individuals who have valid claims against the Company may have no claim against the Unions. Of course, it is likely that most individuals within the class are members of more than one subclass. Indeed, it may be that some individuals are members of all subclasses. Finally, it must be noted that only some of plaintiffs' claims are appropriate for certification under Rule 23(b)(2); the remainder of the claims must be pursued under Rule 23(b)(3), F.R.Civ.P.

## CLASS ACTION CERTIFICATION

■ Plaintiffs seek certification of this action as a class action pursuant to Rule 23(c)(1), F.R.Civ.P.[3] The efficacy

---

1. The Equal Employment Opportunity Commission (the "EEOC") was permitted to file a proposed complaint (Docket Item 23A) as an intervening plaintiff on November 26, 1974 (Docket Item 25) but the intervening plaintiff did not thereafter serve and file its intervening complaint as permitted by the order. See 7A Wright & Miller, Fed.Prac. & Proc. § 1919.

2. The defendants in their answers, pursuant to Rule 8(c), F.R.Civ.P., have affirmatively pleaded the defense of the appropriate statute of limitations. (Docket Items 31 and 37).

3. Docket Item 30. It should be noted that the motion for certification does not describe the same class specified in the second amended complaint. Docket Item 29. The class mentioned in the complaint purports to include future employees. The actual motion for class certification, of course, governs.

Plaintiffs have sought certification of the 42 U.S.C. § 2000e cause of action only as to representatives Toppin and Dallas. The

of the class action as a procedural device for redressing the harms of employment discrimination has been widely recognized. *See, e. g., Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (C.A. 8, 1970). Nevertheless, the mandatory requirements of Rule 23(a) must be satisfied, *Richerson v. Fargo*, 61 F.R.D. 641 (E.D.Pa.1974), *vacated on other grounds*, 64 F.R.D. 393 (E.D.Pa. 1974), and the burden of this showing falls on the moving party. *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (C.A. 6, 1970); *DeMarco v. Edens*, 390 F.2d 836, 845 (C.A. 2, 1968); *Polakoff v. Delaware ·Steeplechase and Race Assn.*, 254 F.Supp. 574 (D.Del.1966).

■■ First, the proposed class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1), F.R.Civ.P. The exact number of potential class members apparently is not known. A list of 318 former and present black employees of the Company has been offered,[4] but many individuals on this list may be barred either by the statute of limitations or its jurisdictional equivalent in 42 U.S.C. § 2000e–5(d) (1964). Because the Company has not maintained complete employment application records,[5] the number of black applicants is apparently unknown. Nevertheless, the proposed class is not amorphous and its membership can be determined by the application of objective standards. Furthermore, there is no requirement that plaintiffs prove the exact number of potential class members. *Fischer v. Kletz*, 41 F.R.D. 377, 384 (S.D.N.Y. 1966). While no talismanic number defines the boundary of the Rule 23(a) (1) requirement, *Cypress v. Newport News General and Nonsectarian Hospital Assn.*, 375 F.2d 648, 653 (C.A. 4, 1967), the number of present and former black employees remaining after exclusion of those whose claims are time-barred, the nature of the claims, the relief sought, and the apparent inability of individual class members to bring actions in their own behalf all indicate that joinder is impracticable.

■ Second, there must be "questions of law or fact common to the class." Rule 23(a)(2). While the impact of the alleged discriminatory practices may have affected potential class members in different ways, the unifying element is alleged racial discrimination in the Company's and the Unions' policies. The Company's strenuous arguments on this issue are directed to the substance of the underlying causes of action and not to the minimal showing necessary to fulfill the preliminary standards of Rule 23(a) (2). In essence, the Company would now have the Court decide the basic contention of the parties, but, of course, the Court may not "conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152 40 L.Ed.2d 732 (1974).

■■ Third, the last two standards of Rule 23(a) can be considered jointly for purposes of this action. Whether the issue is framed in terms of the typicality of the claims, Rule 23(a)(3), or in terms of the fairness and adequacy of the representation, Rule 23(a)(4), *see Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562–63 (C.A. 2, 1968), the Court must decide whether the potential for rivalry and conflict within the class is substantial enough to jeopardize the interests of class members.[6] "Where courts discern that the interests of named plaintiff are in significant part antagonistic to those of the class he purports to represent,

---

other three named plaintiffs, Marshall, Carson and Jones, failed to bring suit in this court within 90 days of receipt of their EEOC right to sue notices. Docket Item 39.

4. Docket Item 63–A.

5. Docket Item 46, p. 12.

6. There has been no suggestion that the attorneys chosen by the class representatives are not professionally qualified.

they decline to entertain the action as a class action." *Phillips v. Klassen*, 502 F.2d 362, 366 (C.A.D.C.), *cert. den.*, 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974). *See Hansberry v. Lee*, 311 U.S. 32, 44–45, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Schy v. Susquehanna Corp.*, 419 F.2d 1112 (C.A. 7), *cert. den.*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970); *compare Souza v. Scalone*, 64 F.R.D. 654 (N.D.Cal.1974) *with Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78 (S.D.N.Y. 1973). The antagonism that prevents certification of a class action must go to the subject matter of the suit. *Berman v. Narragansett Racing Assn.*, 414 F.2d 311 (C.A. 1, 1969), *cert. den.*, 369 U.S. 1037, 90 S.Ct. 682, 24 L.Ed. 681 (1970). The subject matter of this suit—whether or not the Company and the Unions engaged in racially discriminatory employment and representation practices—presents no possible conflict within the class because all members are black and they have a co-extensive interest in eradicating racial discrimination. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F. 2d 239, 247–48 (C.A. 3, 1975). Possibility of conflict within the unitary class over the nature of the relief to be granted if plaintiffs should prevail on the merits does exist. Consideration for this contingency, in part, caused the Court in defining the appropriate subclass to segregate applicants from employees. However, mere speculation about the possibility of conflict will not defeat certification of a class action. Finally, the Court possesses ample powers to protect class members if the dire predictions of future dissension should prove to be fulfilled. *Carr v. Conoco Plastics, Inc.*, 423 F.2d 57, 58 (C.A. 5) (per curiam), *cert. den.*, 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970); *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (C.A. 5, 1968); *Weisman v. MCA, Inc.*, 45 F.R.D. 258, 263 (D.Del. 1968).

Plaintiffs assert that the entire action may be maintained under Rule 23(b)(2).

Defendants, in response, argue that neither 23(b)(2) nor 23(b)(3) is satisfied or, alternatively, that only 23(b)(3) is appropriate. Due to the wide range of relief sought by plaintiffs, some claims satisfy 23(b)(2) while others must be relegated to the more onerous notice requirements of 23(b)(3).

▇ First, plaintiffs' claims for a permanent injunction, a declaratory judgment, and back pay are proper subjects of a 23(b)(2) class action. The "grounds generally applicable to the class" arise from the alleged racial discrimination; the nature of the relief envisioned is equitable. That injunctive and declaratory relief are within the scope of the express language of the rule cannot be denied. Moreover, recent developments have made it clear that back pay is an equitable remedy and appropriate for 23(b)(2) treatment. *Wetzel v. Liberty Mutual Insurance Co., supra* at 250–53; *Franks v. Bowman Transportation Co.*, 495 F.2d 398 (C.A. 5, 1974) *cert. den.*, 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974), *reh. den.*, 420 U.S. 984, 95 S.Ct. 625, 43 L.Ed.2d 667 (1975). The coverage of Rule 23(b) (2) has been expanded to include the award of back pay because that relief is "essentially equitable in nature." *Franks v. Bowman Transportation Co., supra* at 406. On the other hand, the "punitive or exemplary" damages sought by plaintiffs as class representative historically have not been available as an equitable remedy. *Livingston v. Woodworth*, 56 U.S. (15 How.) 546, 559–560, 14 L.Ed. 809 (1854); *Prucha v. Weiss*, 233 Md. 479, 197 A.2d 253, 255 (1964), *cert. den.*, 377 U.S. 992, 84 S.Ct. 1916, 12 L.Ed.2d 1045 (1964); *see Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829, 836 n. 5 (N.D. Cal. 1973). Furthermore, to allow damages in general —"actual, punitive and exemplary"—would effectively render the express limitation in Rule 23(b)(2) to injunctive and declaratory relief meaningless.[7]

7. The Court does not now pass on the issue whether "punitive or exemplary" damages are recoverable under 42 U.S.C. § 2000e et seq. or under 29 U.S.C. § 141 et seq.

■ Second, although the Court finds that the entire action might possibly qualify under Rule 23(b)(3), only that portion which has failed to satisfy the requirements of Rule 23(b)(2) because the relief sought is damages rather than equitable relief must be maintained under Rule 23(b)(3) and conform to the notice requirements of Rule 23(c)(2). In order to certify a class action pursuant to Rule 23(b)(3), the Court must, and it does, find that "the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The issue of discriminatory employment and representation practices clearly outshines any individual questions. It does not appear that any other litigation concerning this controversy has been initiated; nor does it appear that the individual class members have the interest or, perhaps, the capacity to pursue their relief on an individual basis. The District of Delaware is the appropriate forum because the claims arose here. Furthermore, while there may be difficulties in managing the class action if monetary damages or back pay are awarded, the problems may not be insurmountable and, independently, do not justify denial of 23(b)(3) certification. Finally, the crucial question of employment and representation discrimination will be resolved in the 23(b)(2) action. The result would be res judicata against any class member who subsequently sought to vindicate his rights independently. 7A Wright & Miller, Federal Practice and Procedure § 1775. p 19

■ In order to define the scope of class membership as accurately as possible, the Court has determined that it is now appropriate to apply the statute of limitations to the 29 U.S.C. § 141 *et seq.* and 42 U.S.C. § 1981 causes of action and to consider the 90 day jurisdictional prerequisite of 42 U.S.C. §

2000e–5(d) (1964). Filing this suit in this court tolled the running of the statute of limitations against the § 1981 and breach of duty of fair representation claims of the class, *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and the filing of charges with the EEOC preserved the rights of the class members under 42 U.S.C. § 2000e *et seq. Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496 (C.A. 5, 1968). Those individuals who could not have asserted any or all of the various claims when the limitation periods were tolled must be excluded from the corresponding subclasses. *Wetzel v. Liberty Mutual Insurance Co., supra* at 246.

■ Because there is no federal statute of limitations for causes of action arising under 42 U.S.C. § 1981 and 29 U.S.C. § 141 *et seq.,* the appropriate period must be determined by reference to state law. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). It has been held in this district that civil rights actions based on 42 U.S. C. § 1983 are governed by Delaware's three year statute of limitations. 10 Del.Code § 8106. *Trivits v. Wilmington Institute,* 383 F.Supp. 457 (D.Del.1974); *Gordenstein v. University of Delaware,* 381 F.Supp. 718 (D.Del.1974). The interests protected and the evil sought to be remedied are similar under both § 1981 and § 1983, and no significant reason exists to justify differentiating between them for limitation purposes. Therefore, the claims based upon 42 U.S.C. § 1981 are controlled by a three year statute of limitations.

■ It is also necessary to determine the appropriate Delaware statute of limitations to apply to the claims based upon the Unions' alleged breach of the duty of fair representation. 29 U.S.C. § 141 *et seq.* Fortunately, it is not necessary to determine whether this is a

tort claim or a contract claim (compare *De Arroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO,* 425 F.2d 281 (C.A. 1, 1970), *cert. den., sub nom. De Arroyo v. Puerto Rico Telephone Co.,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970), *with Tuma v. American Can Co.,* 367 F.Supp. 1178, 1183–85 (D.N.J. 1973)) because, in any event, Delaware's three year statute of limitations applies. If the action is based on a promise or a statute, the Court must look to 10 Del. Code § 8106 which specifies a three year limitation period in both instances. Thus, it does not matter whether the action arises from the union-member relationship or from a breach of a statutorily imposed duty.

▮ Because the filing of charges with the EEOC did not toll the statute of limitations for purpose of 42 U.S.C. § 1981 and 29 U.S.C. § 141 *et seq., Johnson v. Railway Express Agency, supra,* membership in the subclasses asserting these causes of action is limited to those individuals who could have filed a suit in their own right when the class representatives brought this action. Since this suit was initiated on August 21, 1973, the barrier date for the claims asserted under 42 U.S.C. § 1981 and 29 U.S.C. § 141 *et seq.* is August 21, 1970.

▮ Title VII of the Civil Rights Act of 1964, as in effect in 1969, required as a jurisdictional prerequisite for admittance into a federal district court that a charge be filed with the EEOC within 90 days after the occurrence of the alleged unlawful employment practices. 42 U.S.C. § 2000e–5(d) (1964).[8] While individuals who did not file charges with the EEOC can be included within the class, *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.

D.C. 69, 478 F.2d 979, 985 n. 11 (1973), the status of class members in this case can be no better than the status of the class representatives. Therefore, no one whose grievance did not arise after or continue in existence until ninety days before the filing of these charges by plaintiffs Dallas and Toppin with the EEOC can be a member of any subclass seeking relief under Title VII.

Thus, depending upon when the charges were filed with the EEOC, the standard for excluding individuals whose claims are time-barred from the Title VII subclasses can be defined. The EEOC charges filed by putative class representatives Toppin and Dallas were stamped "Received, December 18, 1969, EEOC Washington Area Office."[9] EEOC regulations in effect in 1969 required that charges "be filed at the offices of the Commission in Washington, D. C., or, upon establishment, at any of its regional or subregional offices."[10] In sum, because the complaints were filed officially on December 18, 1969, the barrier date for the Title VII claims is September 19, 1969 (ninety days prior to formal filing).

Therefore, an order will be entered certifying this action as a class action in accordance with this opinion.

## DISCOVERY

▮ The Court must also consider plaintiffs' motion to compel answers to certain questions asked during the oral deposition of the Company's industrial relations manager, Andrew G. Ahern. While inquiring into the causes of recent layoffs at the Company's Wilmington plant, private plaintiffs' attorney asked several questions about the Company's decentralization actions.[11] Although Mr.

---

8. The period has been extended to 180 days and the corresponding section renumbered to § 2000e–5(e). Pub.L. No. 92–261, § 4, 86 Stat. 104 (March 24, 1972). It appears that no approved state agency was available in 1969 for initial filing.

9. Docket Item 63–A.

10. 30 Fed.Reg. 8408 (July 1, 1965), amended 37 Fed.Reg. 9215 (May 6, 1972) and codified in 29 C.F.R. § 1601.7 (1974). The amendment provides for filing charges with designated EEOC representatives.

11. The Company forcefully argues that plaintiffs have no standing to contest the decision

Ahern stated that the recent Wilmington layoffs were not related to the Company's transferring some of its operations to facilities in other states,[12] he was advised by Company counsel not to answer several questions.[13]

 A Rule 37 motion to compel discovery is, of course, controlled by Rule 26(b)(1) which sets forth the standard against which the inquiries are to be measured. Discovery is generally allowed if the information sought is "relevant to the subject matter involved in the pending action." It is axiomatic that the discovery rules are to be construed liberally in favor of the party seeking discovery. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Bloomer v. Sirian Lamp Co.*, 4 F.R.D. 167 (D.Del.1944). Furthermore, the pleadings do not rigidly fix the permissible range of inquiry. *Chemical Specialities Co. v. Ciba Pharmaceutical Products, Inc.*, 10 F.R.D. 500 (D.N.J.1950). Although delineating the boundaries of appropriate discovery can be challenging and difficult, discovery will be permitted "unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 171 (D.Del.1973). Finally, the necessity for liberal discovery to clarify the complex issues encountered in litigation seeking to redress employment discrimination has been widely recognized. *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (C.A. 5, 1973); *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355 (C.A. 6, 1969).

 After applying these general principles to the facts of this case, the Court is unable to conclude that the "information sought can have no possible bearing upon the subject matter of the action." La Chemise Lacoste, *supra*. Although plaintiffs have failed to articulate clearly the basis for seeking the information, it is conceivable that it might have a bearing upon the subject matter of this action. For example, an affirmative response to a question asking if "the move from Wilmington to McCook, Nebraska [had] anything to do with race" possibly could be relevant to a charge of racial discrimination at the Company's Delaware facilities.[14]

In *Logan v. General Fireproofing Co.*, 5 EPD ¶ 8012 (W.D.N.C.1972), relied upon by the Company, the Court refused to order the defendant to answer interrogatories seeking information about operations at other facilities. It follows from *Logan*, or so the Company argues, that the information sought by plaintiffs is not discoverable because it relates to another plant not involved in the litigation. However, unlike those in *Logan*, the questions here are directed to the impact of the Company's recent out-of-state expansion on its Wilmington work force. This nexus to the Wilming-

---

of Mr. Ahern and Company's counsel not to respond to these questions. Private plaintiffs' counsel did not give notice that he would take the deposition, but it was he who attempted to ask the disputed questions. While the Court cannot condone the oversight by counsel for private plaintiffs, it would appear to be an unnecessary waste of time and energy to require that private plaintiffs' counsel notice the deposition of Mr. Ahern again only to have similar objections interposed when similar questions are asked. In order to expedite the proceeding, the Court will not require such meaningless gestures.

12. Docket Item No. 46, pp. 81–82.

13. For example:
 "Q. Did any employees in Wilmington relocate to McCook, Nebraska?"
 Id. 85.
 "Q. Now, with reference to the transfer of some operations to McCook, Nebraska, could you tell us the purpose of transferring those operations from Wilmington to Nebraska?"
 Id. 86–87.
 "Q. Did the move from Wilmington to McCook, Nebraska have anything to do with race? In other words, was race a motivating factor for that move?"
 Id. 87.

14. The Court, of course, expresses no opinion on this substantive issue.

ton plant. brings the questions within the boundaries of modern discovery.

Also, the Company asserts that these questions constitute "a search apparently undertaken on the basis of pure speculation."[15] The Supreme Court, almost three decades ago, rejected a similar contention: "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor, supra,* 329 U.S. at 507, 67 S.Ct. at 392. Finally, the Company has not seriously argued that answering the questions would impose a substantial and unreasonable burden. *See, e. g., Alexander v. Rizzo,* 50 F.R.D. 374, 376 (E.D.Pa.1970).

Accordingly, an order will be entered granting plaintiffs' motion to compel answers to the disputed questions asked during Mr. Ahern's oral deposition.

---

15. Brief of Defendant Electric Hose & Rubber Company in Opposition to the Motion to Compel the Company's Witness to Answer Questions Propounded at Deposition. Docket Item 64, p. 11.