BROTHERHOOD RAILWAY CARMEN
OF the UNITED STATES AND
CANADA, et al., Plaintiffs,

v.

DELPRO COMPANY, et al., Defendants.

Civ. A. No. 82–464.

United States District Court,
D. Delaware.

May 31, 1983.

---

Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs; Edward J. Hickey, Jr., Michael S. Wolly, and Thomas A. Woodley, Mulholland & Hickey, Washington, D.C., of counsel.

Richard G. Elliott, Jr., Richards, Layton & Finger, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The union plaintiff, Brotherhood Railway Carmen of the United States and Canada ("BRC" or "Union"), along with an individual employee plaintiff member of the Union, Earl D. Whaley ("Whaley" or "plaintiff"), instituted suit against Delpro Company ("Delpro"),[1] and its corporate parent, Trailer Train Company ("TTX"), charging defendant Delpro with intentional, willful and bad faith violations of the RLA arising out of the conduct of labor negotiation which led to failure to achieve an agreement. In addition, plaintiffs alleged various unilateral alterations of the "status quo" culminating in the closing of Delpro's only facility with the termination of all the Delpro employees. Plaintiffs, having sued individually, but also having made class action allegations on behalf of all other employees similarly situated, seek, *inter alia,* declaratory and injunctive relief, back pay, and $750,000 in punitive damages. Presently before the Court is the motion of plaintiff Whaley for class certification. The plaintiff seeks certification for a class composed of employees of Delpro at some time between October 1, 1981 through the closing of Delpro's Bear, Delaware facility on July 23, 1982.[2]

*Statement of Facts*

The facts underlying plaintiff's motion are as follows. On December 17, 1980, BRC was certified by the National Mediation Board as the duly authorized representative of employees of Delpro in the craft or class of carmen, helpers and apprentices. On or about October 1, 1981, BRC served a notice upon Delpro to commence the collective bargaining process. Since that date BRC and Delpro have failed to form a collective bargaining agreement. During the period October 1, 1981 to July 23, 1982, approximately 43 employees voluntarily resigned or were terminated involuntarily from their employment at Delpro. In March 1982, approximately 45 Delpro hourly employees were furloughed at Delpro. Approximately 17 of these employees were recalled and returned to work. In June and July 1982, approximately 225 Delpro hourly employees were furloughed in connection with the planned closing of the Delpro facility. Finally, all Delpro hourly employees were terminated in July 1982. (*See* Doc. 68, La Conte Affidavit). Whaley, a member of BRC, was employed at Delpro's Bear, Delaware facility from April 1980 until July 9, 1982 when he was furloughed and subsequently terminated as a result of the closing of the Bear facility. (Doc. 63, Whaley Affidavit).

*Discussion*

■ In a previous opinion, *Brotherhood Railway Carmen of the United States and Canada v. Delpro Co.,* 549 F.Supp. 780, 782 (D.Del.1982), the Court held that BRC could seek declaratory and injunctive relief, other than reinstatement of terminated employees, on behalf of its members formerly employed at Delpro's Bear, Delaware facility. The Court also held, however, that BRC could not seek punitive damages, back pay or benefits on behalf of its members. On

---

1. In *Delpro Co. v. Brotherhood Railway Carmen of the United States and Canada,* 519 F.Supp. 842, 849 (D.Del.1981), *aff'd,* 676 F.2d 960, 965 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982), Delpro was adjudged a carrier as defined by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*

2. At oral argument, March 10, 1983, plaintiff agreed to exclude from the proposed class approximately 77 hourly employees of Delpro who were no longer employees as of October 1, 1983.

the basis of this previous holding, there is no need to certify a class to pursue all of the issues raised in the complaint. BRC will fully present the claims of the putative class members on all issues other than those claims that it does not have standing to pursue on behalf of its members. Pursuant to Rule 23(c)(4)(A), however, an action may be brought or maintained as a class action with respect to particular issues as long as the requirements of Rule 23 are satisfied. Therefore, the issue before the Court is whether a class should be certified to pursue reinstatement, punitive damages, back pay or benefits.

### a. Prerequisites of Rule 23(a)

■ In a motion for class certification, the plaintiff must make a prima facie showing in the complaint satisfying Rule 23. The burden of proving that an action is appropriate for class certification is on the party seeking to represent the class. *See Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974). Initially, the plaintiffs must satisfy the prerequisites for a class action contained in Fed.R.Civ.P. 23(a).[3]

### 1. Numerosity

■ Plaintiff seeks to represent approximately 296 employees employed at Delpro's Bear facility in the craft or class of carmen, helpers and apprentices at any time between October 1, 1981 and July 1982. Plaintiff asserts, and defendants do not disagree, that because of the number of individuals involved and their geographical dispersion in three states, no serious argument can be made that joinder of all in this action is practicable. The Court agrees with plaintiff that joinder would be impracticable in this case. Under the rule, joinder need not be impossible but simply impracticable. *See In Re Itel Securities Litigation,* 89 F.R.D. 104, 111–112 (N.D.Cal.1981); *In Re Gap Stores Securities Litigation,* 79

F.R.D. 283, 302 (N.D.Cal.1978). The nature of the claims, the relief sought and the apparent inability of the class members to bring actions on their own behalf all indicate that joinder is impracticable. *Marshall v. Electric Hose and Rubber Co.,* 68 F.R.D. 287, 291 (D.Del.1975).

### 2. Commonality

■ Rule 23(a)(2) requires that "common questions of law or fact" be present among all class members. Rule 23(a)(2) requires neither that common issues predominate over individual issues nor that the common issues be dispositive of the case. *See Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 37 (E.D.Va.1981); *Resnick v. American Dental Ass'n,* 90 F.R.D. 530, 538–39 (N.D.Ill. 1981). The Fifth Circuit Court of Appeals has stated that the rule "does require that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982).

Common questions of law and fact are present regarding the issues for which class certification is sought. One common question of law is whether the defendants' conduct from October 1981 until July 1982 entitles the class members to punitive damages. This legal question also involves numerous common issues of fact regarding the activities of the defendants during this period. Common questions of law and fact also arise from the termination of all furloughed union members in July 1982. The resolution of these common questions of law and fact will affect all or a significant number of the putative class members.

### 3. Typicality

■ The focus of the typicality prerequisite of Rule 23(a) is upon the alignment of the claims and interests of the class representative and the class members. *Scott v.*

---

**3.** Fed.R.Civ.P. 23(a) states:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are

questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*University of Delaware,* 601 F.2d 76, 85 (3d Cir.1979), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1980). A "class representative must be part of the class and 'possess the same interests and suffer the same injury' as class members." *Id.* at 85 n. 19 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)). A representative's claim should be considered typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of the other class members and if the claims of the representative are based on the same legal theory. *Resnick v. American Dental Ass'n,* 90 F.R.D. at 539; *see* 1 H. Newberg, *On Class Actions,* § 1115(b) & (c) (1977 & Supp.1980 & Cumm.Supp.1982); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 (1972 & Supp.1983). "Where the class [representative's] claims are such that they will have to prove the same elements as the remainder of the class, then typicality should be found notwithstanding factual differences between various members of the class." *Brown v. Cameron-Brown,* 92 F.R.D. at 38; 1 H. Newberg, *On Class Actions,* § 1115(b) & (c). One of the functions of Rule 23(a)(3), however, is "to screen out class actions . . . when the legal and factual position of the representative is markedly different from that of other members, even though common issues of law or fact are raised." *Brown v. Cameron-Brown Co.,* 92 F.R.D. at 38; *see* 7 Wright & Miller, *Federal Practice and Procedure* § 1764.

Plaintiff asserts that the claims of the plaintiff are virtually identical to, and therefore typical of, the claims of the class members. Defendants contend, however, that the claims of the plaintiff are not typical of those of the class members who were involuntarily terminated, were furloughed in March 1982 or voluntarily resigned. Defendants claim that the differing factual positions of these class members renders their claims not typical of the claims of the proposed representative.

The parties are correct in concluding that the plaintiff's claims are typical of the class members who were furloughed in June and later terminated in July 1982. Their claims and interests are identical. Moreover, although the factual position of the class members furloughed in March 1982 may diverge slightly from that of the class representative who was part of the furlough in July, their position is not so markedly different as to warrant a finding that the claims of the class representative are not typical of these class members. Plaintiff alleges that both furloughs were part of concerted anti-union activity. Moreover, both groups of employees were finally terminated in July 1982. As long as the interests [4] of the class representative "merely diverge from, but do not clearly conflict with unnamed class members . . . such a divergence will be harmless in that it will not impair the incentive of the named representative in vigorously prosecuting all aspects of the case." *Scott v. University of Delaware,* 601 F.2d at 85.[5]

Defendant also objects to the inclusion of 43 union members who were involuntarily terminated or who voluntarily left the employ of Delpro during the period from October 1, 1981 to July 1982. Defendants claim that the factual position of these plaintiffs is so different than that of class members terminated in July of 1982 that the claims of the plaintiff are not typical of these class members.

The claims for individualized relief for these class members are not typical of the plaintiff's claims. It is likely that each

4. The defendants' contention that a conflict of interest regarding seniority rights exists between those employees furloughed in March and those furloughed in June and July will be addressed in the discussion of Rule 23(a)(4), adequacy of representation, *infra,* p. 476.

5. "If necessary, the Court may designate a number of class representatives, each advancing somewhat different theories of the case, and may establish subclasses to accommodate divergent views as the litigation proceeds." *Scott v. University of Delaware,* 601 F.2d at 86. However, it does not appear at this time that the creation of a subclass of employees furloughed in March will be necessary.

class member will have to establish that he either was terminated for an improper reason in violation of the RLA or left Delpro voluntarily as a result of the defendants' alleged RLA violations. These aspects of the class members' claims can hardly be considered typical of the claims of the other class members. In setting forth his case, the plaintiff will not establish the liability of the defendants with respect to these individuals. Issues involving the reinstatement and the award of back-pay benefits, and punitive damages of class members who left the employ of Delpro because of involuntary termination or voluntary resignation will not be treated on a class action basis. Therefore, Union members who either left Delpro voluntarily or who were involuntarily terminated for cause will be excluded from the class for which the plaintiff seeks certification. This exclusion will not affect the Court's finding regarding numerosity. *See supra* p. 474.

### 4. Adequacy of Representation

■ Finally, Rule 23(a)(4) requires that the class representative will fairly and adequately protect the interests of the class. Under the rule, the class representative must assure that the case will be prosecuted vigorously and that no potential conflicts exist between the class representative and other members of the class. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *see Brown v. Cameron-Brown Co.,* 92 F.R.D. at 40–41.

The defendants do not contend that the class representatives' counsel are not qualified to vigorously prosecute the case. Defendants assert, however, that a conflict of interest is present among class members who left the employ of Delpro at different times. At oral argument, defendants reasoned that employees terminated at one time will not want employees with greater seniority but terminated at an earlier time

to return to Delpro assuming the plant is reopened and the prevailing class members reinstated.

■ · Conflicts among class members over seniority can form a basis for finding that a class representative is not adequate. In *General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 331, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980), the Supreme Court stated that:

> [C]onflicts might arise, for example, between employees and applicants who were denied employment and who will, if granted relief, compete with employees for fringe benefits or seniority. Under Rule 23, the same plaintiff could not represent these classes.

Similarly, in *Scott v. University of Delaware,* 601 F.2d at 86 n. 21, the Third Circuit Court of Appeals questioned the certification of a class where the interests of one group could be adversely affected by the success of another group within the same class.

In the instant case, the defendants have not established that the interests of the class members terminated at different times are sufficiently adverse to warrant the creation of subclasses. The defendants have not shown that any employees terminated in March were less senior than those terminated in July. *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d at 253 n. 30. Moreover, the claims of the plaintiff are sufficiently broad to include the claims of other class members whose furlough did not occur at the same time as the plaintiff's. It is likely that the plaintiff will attempt to establish concerted behavior on the part of the defendants from October 1, 1981 until the present in establishing his claim for punitive damages.[6]

### b. Class Action Maintainable

Having satisfied the prerequisites of Rule 23(a), the plaintiff must additionally satisfy one of the three prerequisites of Rule 23(b). The parties disagree as to whether the class

---

**6.** Again, the Court may establish subclasses pursuant to Rule 23(c)(4)(B) if the interests or claims of the class members appear to diverge

to such an extent that representation by the plaintiff would not be adequate. *See supra* note 5.

action should be maintained under Rule 23(b)(2) or Rule 23(b)(3).[7]  Plaintiff asserts that since the defendants have acted and refused to act on grounds generally applicable to the class, final injunctive relief, in the form of reinstatement, is appropriate for the class as a whole and maintenance of the action pursuant to Rule 23(b)(2) is proper.  Defendants argue that a class composed of Union members furloughed in March, June and July 1982 is not sufficiently cohesive for a Rule 23(b)(2) class action.  Defendants, relying on *Marshall v. Electric Hose and Rubber Co.,* 68 F.R.D. at 292, also argue that the plaintiff's claim for punitive damages precludes certification under Rule 23(b)(2).  In response, plaintiff argues that since the claim for punitive damages is subordinate to the request for injunctive relief, certification is proper under Rule 23(b)(2).  Alternatively, plaintiff offers that all but the claims for punitive damages could be certified under Rule 23(b)(2) while certifying the punitive damage claim under Rule 23(b)(3).

1.  *Reinstatement, Back Pay and Benefits—Rule 23(b)(2)*

■  Where final injunctive relief in the form of reinstatement, and equitable relief

consisting of back pay and benefits are sought, maintenance of a class action pursuant to Rule 23(b)(2) is proper, *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d at 250–53, as long as the class is sufficiently cohesive so that the employer is answerable on grounds generally applicable to the class and the relief sought inures to the class as a whole.  *Id.* at 251.  In the instant case, the class as defined by the Court consists of two groups of Union members, one furloughed in March 1982, the other in June 1982.  Both groups were terminated in July 1982 in connection with the closing of the Bear facility.  In addition, many of the class members furloughed in March were later recalled and furloughed in June or July.  As discussed *supra* at 475–476, the differing factual positions of some class members with respect to others are not sufficiently different as to preclude the Court from granting class-wide relief.[8]  As the case proceeds, if it appears that the positions of these two groups are so different, then, pursuant to Rule 23(c)(4)(B), two subclasses can be created and the issues of reinstatement, back pay and benefits can be treated under subsection (b)(2) for each subclass.

7.  Rule 23(b)(2) and (3) provides:
    (b) Class Actions Maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
    *    *    *    *    *    *
    (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
    (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of con-

centrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

8.  The case cited by the defendants, *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656 (N.D.Cal.1976), *appeal dismissed as moot,* 602 F.2d 925 (9th Cir.1979), is not dispositive of the issue in this case.  The Court stated in *Nguyen Da Yen* that an "extremely close identity of questions and of typical claims is required" to maintain a subclass under subsection (b)(2).  To the extent the Court agrees with this holding, a close identity of issues exists in this case.  *Id.* at 667.  Moreover, in *Nguyen Da Yen,* the Court stated that:
    This case involves a group of some two thousand individual children and the plethora of individual factual and legal questions relating to each child.  The requirements of hearings and determinations as to each child's situation preclude the fashioning of any relief which might be directed toward the group as a whole.
    *Id.*  A plethora of individual issues is not present in this case.

### 2. *Punitive Damages—Rule 23(b)(3)*

The plaintiff also seeks punitive damages on behalf of the class. In *Marshall v. Electric Hose and Rubber Co.,* 68 F.R.D. at 292, Chief Judge Latchum held that a punitive damages claim could not be maintained as a class action under subsection (b)(2). He stated that "to allow damages in general— 'actual, punitive and exemplary'—would effectively render the express limitation on Rule 23(b)(2) to injunctive and declaratory relief meaningless." *Id.* Since punitive damages are sought, that aspect of this litigation must be maintained under Rule 23(b)(3) and conform to the notice requirements of Rule 23(c)(2) if, as the Court now finds, the requirements of Rule 23(b)(3) are satisfied.

A class action on the issue of punitive damages satisfies the requirements of Rule 23(b)(3). Common questions of law and fact predominate over questions affecting only individual members on this issue. Once a determination is made that the class members are entitled to punitive damages, the only remaining issue will be the amount of damages to which each individual class member is entitled. As with the individualized issues of the amount of back pay and benefits, this determination may or may not require individualized hearings or proof of claims. In addition, class treatment of this issue, when viewed in the context of the dispute between BRC and the defendants, is clearly superior to other methods for the adjudication of this controversy. *See Marshall v. Electric Hose and Rubber Co.,* 68 F.R.D. at 293.

*Conclusion*

In summary, the plaintiff's motion for class certification will be granted. The class will be composed of all BRC members employed at Delpro's Bear, Delaware facility who were furloughed in March or June 1982 and terminated in July 1982. The class representative, Whaley, will pursue on behalf of the class those issues pertaining to reinstatement and the award of back pay, benefits and punitive damages. The issues of reinstatement, back pay and benefits will be afforded class action treatment under Rule 23(b)(2). Judgment on these issues will be binding on all class members. As to the issue of punitive damages, this aspect of the action will be maintained under Rule 23(b)(3). Pursuant to Rule 23(c)(2), the class representative will notify all class members that (1) the Court will exclude any class member from the class determination of the issue of the award of punitive damages if the class member so requests within 60 days of the Court's approval of the form of notice to class members, (2) the judgment on the award of punitive damages, whether favorable or not, will include all members who do not request exclusion; and (3) any class member who does not request exclusion may, if he desires, enter an appearance through his counsel. In addition, the notice should include a brief statement of the plaintiff's claims and that the class members will be notified in the future as to the manner in which they can proceed to submit proof of claims, if necessary, for individual damages if it is determined that the defendants are liable. The plaintiff will submit a proposed form of notice within 10 days of the date of this Opinion. The defendants will submit any objections to the plaintiff's form of notice within 10 days following receipt of the plaintiff's proposal.

An appropriate order will issue.