**178**

**UNITED NATIONAL RECORDS, INC.,**
**on behalf of itself and all others**
**similarly situated, Plaintiff,**

v.

**MCA, INC., et al., Defendants.**

No. 82 C 7589.

United States District Court,
N.D. Illinois, E.D.

Sept. 30, 1983.

Granvil I. Specks, Specks & Goldberg, Ltd., James B. Sloan, James B. Sloan & Associates, Chicago, Ill., for plaintiff.

Fred H. Bartlit, Jr., David E. Springer, Michael P. Foradas, Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

These lawsuits, consolidated in this Court for pretrial proceedings, were filed by wholesalers and retailers of phonograph records and pre-recorded magnetic tapes ("records and tapes") against several major producers of records and tapes in the United States. The complaint charges that

1. First Supplemental Affidavit of Bobby Joiner, President of United National Records, Inc., dated May 16, 1983.

since January 1, 1971, defendants conspired to fix, maintain and stabilize the prices of records and tapes in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Before the Court is plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons stated below, plaintiffs' motion for certification of a class, as herein defined, is granted.

### Facts

Plaintiffs United National Records, Inc. ("United") and A Record Shop, Inc. ("A Record") seek to represent the following class:

> All persons, firms and corporations in the United States which during the period January 1, 1971 to December 31, 1982, purchased for resale any phonograph records or pre-recorded magnetic tapes from any defendant, or any subsidiary or affiliate thereof, excluding:
> (a) defendants in all related cases and other manufacturers of records or tape, their respective subsidiaries and affiliates, and (b) any purchaser from any defendant, or any subsidiary or affiliate thereof, of records or tapes on a mail order basis as a member of a record or tape club.

United is a wholesale distributor and retailer of records and tapes doing business in Gary, Indiana. Between January 1, 1972, and the date of the complaint, United purchased substantial quantities of records and tapes from various defendants in this litigation.[1] A Record was engaged in the retail record and tape business until October, 1980. Between February, 1973 and August, 1977, A Record purchased records and tapes from two of the defendants named in these lawsuits.[2]

Plaintiffs charge that defendants, major producers of records and tapes in the United States, violated § 1 of the Sherman Act, 15 U.S.C. § 1 by entering into a horizontal

2. Affidavits of Daniel Harness, President of A Record Shop, Inc., dated April 11 and May 6, 1983.

price fixing conspiracy between 1971 and 1982 regarding the sale of records and tapes in the United States. Plaintiffs further allege that defendants fraudulently concealed their unlawful conspiracy from plaintiffs until shortly before the instant complaints were filed. Defendants oppose class certification pending further discovery between the parties.

Defendants assert essentially two arguments in opposition to class certification. First, defendants argue that further discovery is required to enable this Court to properly define and certify the class. Second, defendants argue that the named plaintiffs' claims are not typical of the class they seek to represent and therefore it cannot be determined that plaintiffs will fairly and adequately protect the class' interest. Both arguments are addressed below.

### Class Certification

Before certifying a class under Rule 23, the party seeking certification must establish that all of the requirements of part (a) and one of the requirements of part (b) of the Rule have been met. Under part (a), the proposed class must meet the prerequisites of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1981); *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976). Under part (b)(3), plaintiffs must show that common questions of law or fact predominate over individual questions and that a class action is the superior method of adjudicating the controversy. *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3rd Cir. 1974).

At this stage of the pleadings, the Court must construe each factor liberally without undue inquiry into the merits of plaintiffs' claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). The Court's inquiry is limited to whether plaintiffs' claims, assuming their

merit, satisfy the requirements of Rule 23. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981); *Blackie v. Barrack,* 524 F.2d 891, 900–01 (9th Cir.1975). In determining whether the prerequisites of Rule 23 are met, however, the Court may look behind the pleadings and consider affidavits and other documents before it makes a class determination. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

#### A. Numerosity

■ The plaintiffs' class is estimated to include approximately 42,000 members. The Court finds that the proposed class is so numerous that joinder of all members is impracticable.

#### B. Common Questions

■ Plaintiffs charge that defendants entered into a nationwide conspiracy to fix prices which had the effect of artificially raising the price plaintiffs paid for records and tapes. The proposed class is limited to direct purchasers of records and tapes during the conspiracy period alleged in the complaints. The Court finds that plaintiffs' complaint raises the following questions common to the proposed class: (1) whether defendants unlawfully conspired to fix the prices of records and tapes; (2) assuming such a conspiracy existed, whether it had an anticompetitive effect upon the record and tape industry; and (3) assuming such a conspiracy existed, whether defendants fraudulently concealed its existence from the proposed class.[3]

#### C. Representative Claims Typical

■ The thrust of defendants' objection to class certification is that, at least pending further discovery, plaintiffs National and A Record have failed to establish that their claims are typical of the class members they seek to represent. In support, defendants raise several potential problems

---

**3.** Technically, this question is common only to class members who purchased records and tapes prior to December, 1978 and therefore

must plead fraudulent concealment to avoid the four-year limitations period.

in certifying the proposed class at this time. At this stage, however, these problems are merely potential. Class certification is inherently conditional and subject to change should these potential problems materialize. *Seligson v. Plum Tree, Inc.,* 55 F.R.D. 259, 263 (E.D.Pa.1972).[4]

■ First, defendants argue that plaintiffs' claims may not be typical because the proposed class has been too broadly defined. Defendants note that the proposed class attempts to include "wholesalers, retailers, large chains [and] corner stores" within its coverage. Defendants conclude that "whether plaintiffs should represent such disparate persons can best be decided after discovery into the industry structure."[5] At this point, however, no evidence has been presented to indicate that these "disparate persons" would have claims atypical to the named plaintiffs. All proposed class members, large and small, have purchased directly from one or more of the defendants during the relevant period. Although the named plaintiffs' interest may differ quantitatively, the Court sees no qualitative difference between the claims of plaintiffs and their proposed class. *See Hedges Enterprises, Inc. v. Continental Group, Inc.,* 81 F.R.D. 461, 466 (E.D.Pa.1979); *Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484, 487 (N.D.Ill.1969).

■ Second, defendants argue that the "typicality" requirement has not been satisfied because plaintiffs' claims embrace the unnecessarily broad category of "any phonograph records or pre-recorded magnetic tapes." Defendants assert that further discovery may reveal preferred sub-classes of products instead of the proposed blanket certification of all pre-recorded records and tapes. There is no requirement, however, that plaintiffs' claims involve identical products or identical pricing structures. *See In Re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 734 (N.D.Ill.1977). Although such product diversity may go to the amount of damages recoverable by various class members, it does not negate the fact that all class members share the same claim resulting from defendants' alleged conspiracy.

■ Third, defendants argue that plaintiffs' claims are not typical because they failed to make purchases from defendants within the past four years. The significance of this argument is that class members with purchases prior to December, 1978, must prove fraudulent concealment in order to avoid the four-year limitations period while class members with purchases after December, 1978, need only prove the elements of the Section 1 violation to prevail. Defendants' argument, however, is not convincing. United avers that it purchased records and tapes during both the 1971–78 and the 1979–82 periods. Therefore, United's claims are typical of both class members suing within the limitations period and class members relying upon fraudulent concealment allegations.

■ Plaintiff A Record, on the other hand, apparently did not purchase records or tapes from any of the defendants during the four-year limitations period. Defendants, therefore, argue that A Record's claim is not typical of class members with purchases during the four-year limitations period. Defendants rely upon *General Telephone, supra,* and assert that the "plaintiffs' presentation here shares the weaknesses that the Supreme Court held precluded certification in *General Telephone.*"

In *General Telephone,* an employment discrimination action, the trial court found

---

4. Federal Rule of Civil Procedure 23(c)(1) admonishes the Court to rule on the class certification issue "[a]s soon as practicable after the commencement of an action." Rule 23(c)(1) further provides that the class certification order "may be conditional, and may be altered or amended before the decision on the merits."

5. Defendants' Response to Plaintiffs' Motion For Class Certification filed April 25, 1983, at 6–7.

that the defendant had discriminated against the plaintiff in its promotion practices. Regarding the class which the plaintiff represented, the trial court found that the defendant had discriminated against class members in hiring, but not promotion, practices. *General Telephone, supra,* 457 U.S. at 152, 102 S.Ct. at 2368. On appeal, the Supreme Court reversed the trial court's class certification because the named plaintiff's claim was not typical of the class he sought to represent given the difference between the hiring and promotion discrimination claims. The Court concluded that "it was error for the District Court to presume that respondent's claim was typical of other claims...." *Id.* at 158, 102 S.Ct. at 2371.

*General Telephone,* however, is distinguishable and therefore does not prevent class certification in this action. Class members who purchased records and tapes before and after 1978 share several common questions of law and fact. All class members, regardless of their purchase dates, must prove the elements of a Sherman Act violation in order to prevail. The claims of class members who purchased before 1978 (such as A Record) are identical to the post-1978 claims with the one exception that pre-1978 class members will bear the additional burden of proving fraudulent concealment in order to prevail. Defendants have not convinced the Court that A Record's interests are, or will be in the future, in conflict with the post-1978 claimants' interest. As there is no requirement that each issue be raised by all class members or class representatives (*Vulcan Society v. Fire Dept. of White Plaines,* 82 F.R.D. 379, 401 (S.D.N.Y.1979)), the Court finds that plaintiffs' claims are typical of all class members who purchased during the alleged conspiracy period.

### D. Adequacy of Representation

■ The Rule 23(a)(4) prerequisite is satisfied when it appears that (1) the representatives and their attorneys will competently and vigorously prosecute the suit,

and (2) the interests of the class representatives are not antagonistic to or in conflict with the other members of the class. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1974); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977). Regarding the first prerequisite, plaintiffs' counsel have demonstrated that they possess extensive experience in complex antitrust and other multi-party litigation. Regarding the second prerequisite, however, defendants argue that antagonism may exist or develop between the following groups in the proposed class: (1) between pre- and post-1978 purchasers; (2) between wholesalers and retailers; (3) between purchasers of diverse products; and (4) between small and large volume purchasers. For the reasons stated in section C, *supra,* the Court finds each of these arguments without merit.

### E. Rule 23(b)(3)—Predominance of Common Questions; Manageability and Superiority

■ In addition to satisfying the prerequisites of Rule 23(a), plaintiffs must establish that,

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Federal Rule of Civil Procedure 23(b)(3). Plaintiffs have clearly met the prerequisites of Rule 23(b)(3). As in virtually all national horizontal price fixing cases, the conspiracy issue here will predominate over individual issues such as damages. *See, e.g., Seligson v. Plum Tree, Inc.,* 55 F.R.D. 259, 262–63 (E.D.Pa.1972). Finally, class certification is clearly superior to other methods of litigation available. *See, e.g., In re Glassine and Greaseproof Paper Antitrust Litigation,* 88 F.R.D. 302, 306–07 (E.D.Mich.1980); *In Re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 734 (N.D.Ill.1977).

*Conclusion*

For the reasons stated herein, plaintiffs' motion for class certification is granted.

IT IS SO ORDERED.