**UNITED NATIONAL RECORDS, INC., on behalf of itself and all others similarly situated, Plaintiffs,**

v.

**MCA, INC., et al., Defendants.**

**No. 82 C 7589.**

United States District Court, N.D. Illinois, E.D.

March 13, 1984.

Granvil I. Specks, Perry Goldberg, Specks & Goldberg, Ltd., James B. Sloan, Sloan & Associates, P.C., Chicago, Ill., for plaintiffs.

John P. Lynch, Latham & Watkins, Hedlund, Hunter & Lynch, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Before the Court is defendants' motion to vacate class certification. For the reasons discussed below, defendants' motion is denied.[1]

---

**1.** An order denying a motion to vacate class certification under Fed.R.Civ.P. 23 is always without prejudice. *See* Fed.R.Civ.P. 23(c)(1) (providing that class certification order may be altered or amended before the decision on the merits).

## I. FACTS

On September 30, 1983, plaintiffs United National Records, Inc. ("United") and A Record Shop, Inc. ("A Record") were certified by this Court to represent a class of approximately 42,000 wholesalers and retailers of phonograph records and pre-recorded magnetic tapes ("records and tapes") which purchased records and tapes from any defendant after January 1, 1971. *United National Records, Inc. v. MCA*, 99 F.R.D. 178, (N.D.Ill.1983). Defendants include several major producers of records and tapes in the United States.

The complaint is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and charges that since January 1, 1971, defendants entered into a combination and conspiracy to fix the price of records and tapes in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Specifically, plaintiffs allege that defendants entered into a horizontal price fixing agreement and policed adherence to the fixed prices. The complaint also charges that defendants imposed general industrywide terms and conditions of sale, including the terms under which class members were permitted to return unsold records to defendants for credit on their accounts (hereinafter referred to as "returns policies").[2]

Since this Court's September 30, 1983 Order, defendants have deposed the class representatives and several plaintiffs in related cases consolidated in this Court for pretrial proceedings. Relying upon these depositions, defendants argue that plaintiffs have not sustained their burden of maintaining a class action under Rule 23 of the Federal Rules of Civil Procedure.

Defendants assert essentially four arguments in support of decertifying this class action. First, defendants argue that individual issues will predominate at trial over questions common to the class. Second, defendants argue that United and A Record have failed to establish that they will adequately protect the interest of the class as required by Rule 23(a)(4). Third, defendants argue that United and A Record have not shown that their claims are typical of those of absent class members as required by Rule 23(a)(3). Finally, defendants argue that plaintiffs have not shown that a class action is superior to individual trials as required by Rule 23(b)(3). Each argument is addressed below.

## II. DISCUSSION

### A. *Predominance of Common Questions*

█ In private antitrust actions, the defendants' alleged violation of the antitrust laws is often an issue which predominates over individual issues at trial. *See* 9 J. Von Kalinowski, *Antitrust Laws and Trade Regulation*, § 108.03(4), at 108–98–99 (1983); 3B *Moore's Federal Practice*, ¶ 23.-46, at 23–396–416 (2d ed. 1982). When the antitrust violation complained of is predicated upon an alleged horizontal price fixing agreement, proof of the combination or conspiracy among the defendants to fix prices often becomes the predominant issue in the litigation. *See, e.g., Seligson v. Plum Tree, Inc.*, 55 F.R.D. 259, 262–63 (E.D.Pa.1972). Similarly, where a price-fixing conspiracy is alleged, the existence of overcharges arising from the alleged conspiracy often satisfies the requirements of Rule 23(a)(3). *See* 9 V. Kalinowski, *supra*, § 108.02[4], at 108–48 (1983). For example, the court in *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32 (E.D.Va.1981), found that:

... [T]he proof plaintiffs' representatives would have to present to establish the existence, implementation, and effect of a conspiracy would be essentially common to the entire class constituting a 'common thread of evidence which would correspond to evidence which would oth-

---

**2.** According to defendants, "returns policies" refers to "the circumstances under which record companies would accept returned records and tapes from distributors, and the amount of credit they would receive in exchange." Defendants' Memorandum, filed Dec. 6, 1983, at 20.

erwise be introduced by absent class members.'

\* \* \* \* \* \*

Establishing a conspiracy in this case, though not the gravamen of the case, will be a crucial and most difficult aspect of the case to prove.

*Id.* at 48.

Defendants, however, strenuously object to these cases being characterized as normal antitrust cases. In fact, defendants seem to view this litigation as a group of disgruntled businessmen who have raised a smorgasbord of individual business grievances under the guise of antitrust claims.[3] Plaintiffs respond by asserting that defendants have "mischaracterized" the deposition testimony and have created a "fictionalized record" to support their arguments.

The Court, having carefully reviewed the transcript excerpts attached to defendants' motion, together with the complete transcripts of the Joiner and Harness depositions, finds defendants' arguments to be without merit. The testimony is admittedly capable of more than one interpretation by respective counsel. The parties, however, are nonlawyers expressing in lay terms what they believe their injuries to be. As the court in *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32 (E.D.Va.1981) noted:

> This Court has previously recognized in this case that a layperson can provide only minimal assistance to advise and guide his lawyer through the intricacies of a large anti-trust suit such as this. Presumably, then, plaintiffs can be expected to rely heavily on their attorneys....

*Id.* at 41 (citations omitted). Having reviewed the deposition testimony, the Court is satisfied that plaintiffs' charges that de-

fendants violated the antitrust laws will predominate over any individual issues at trial. Specifically, the Court finds that the issues of "violation" of the antitrust laws, "fact of damage" and "amount of damage" will predominate over individual issues at trial. *See Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 44–45 (E.D.Va.1981).

Whether the damage issue is susceptible of classwide proof will depend upon plaintiffs setting forth an acceptable method of computing damages on a classwide basis. *See In re Fine Paper Antitrust Litigation*, 82 F.R.D. 143, 154 (E.D.Pa.1979), *appeal dismissed*, 617 F.2d 22 (3d Cir.1980). The Court notes, however, that the necessity of calculating damages on an individual basis normally will not preclude class determination when common issues of liability predominate. *Id.*

The Court is convinced, based on the present record, that common issues of liability will predominate at trial. The fact that some plaintiffs allegedly suffered unique injuries due to defendants' returns policies does not warrant individual trials. *See Siegel v. Chicken Delight, Inc.*, 271 F.Supp. 722, 726–27 (N.D.Cal.1967). If it becomes apparent after further discovery that individual claims regarding defendants' returns policies will predominate at trial, those claims may be severed from the class action trial or appropriate subclasses may be defined. *See* 3B Moore's Federal Practice, *supra*, ¶ 23.45[2], at 23–334. If, however, defendants' alleged conspiracy to impose unlawful returns policies was, as plaintiffs allege, an industrywide practice which affected all members of the class uniformly, the "returns policies" claim will also be more efficiently presented in one class action trial. Defendants' implicit suggestion that the Court consider the merits

---

**3.** Specifically, defendants argue that, notwithstanding the conspiracy allegations in the complaint, the actual grievances raised by the plaintiffs are individual in nature. Relying upon various deposition transcripts, defendants make the following contentions: (1) only two of the eight deposed plaintiffs brought suit because they felt prices were too high; (2) one plaintiff (Levin) stated that he did not believe prices were too high; (3) while two of the eight de-

posed plaintiffs brought suit because of the change in returns policies, other plaintiffs either benefited from the change in returns policies or were not affected by it; (4) one plaintiff (Stamatopoulos) stated that the alleged conspiracy included an agreement among defendants to fix customer classifications; and (5) only two of the eight plaintiffs stated that credit terms were fixed by defendants.

of plaintiffs' conspiracy claims must be rejected. *In re South Central States Bakery Products Antitrust Litigation,* 86 F.R.D. 407, 423 (M.D.La.1980). In sum, plaintiffs have satisfied their burden under Rule 23(b)(3) that common questions of law and fact will predominate over individual questions at trial.[4]

## B. *Adequacy of the Named Representatives and Typicality*

■ The adequacy of representation requirement ensures that (1) the representatives and their attorneys will competently and vigorously prosecute the suit and (2) that the interests of the representatives are not antagonistic to the interests of other class members. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1974). The typicality requirement guarantees that the representatives' interests will be coextensive with the interest of potential class members. *E.g. Kaminski v. Shawmut Credit Union,* 416 F.Supp. 1119 (D.C.Mass.1976). The Court shall consider these requirements together. *See* 3B Moore's Federal Practice, *supra,* ¶ 23.06–2.

### 1. *Competent and Vigorous Representation*

Defendants argue that the named representatives have failed to show that they competently and vigorously prosecute the lawsuit as required by Rule 23(a)(4). In support of their argument, defendants assert that the named representatives: (1) lack personal knowledge of the lawsuit; (2) lack the financial ability to bear the responsibilities of class representation and (3) lack the integrity required to represent the class. Defendants' assertions are without merit and, in fact, frivolous.

■ First, despite defendants' contention to the contrary, the class representatives demonstrated at their depositions that they possess an adequate understanding of their claims as well as the scope of their responsibilities as court appointed class representatives. Their "personal knowledge" far exceeds what is required of them. *See Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 41 (E.D.Va.1981); *Eggleston v. Chicago Journeymen Plumbers, etc.,* 657 F.2d 890, 896 (7th Cir.1981).[5] Second, the named representatives have assumed the financial responsibility of representing a class in this action and also have demonstrated their ability to accept that responsibility. Plaintiffs have vigorously prosecuted their lawsuits thus far, and there is no indication that their efforts will be anything less than vigorous during the remainder of litigation. Furthermore, the adequacy requirement of Rule 23(a) is satisfied when the plaintiff's counsel advances costs providing that the plaintiff remains ultimately responsible for payment. *See, e.g., In re Alcoholic Beverages Litigation,* 95 F.R.D. 321, 326 (E.D.N.Y.1982); *Eirhart v. Libbey-Owens-Ford Co.,* 89 F.R.D. 424, 428 (N.D.Ill.1981). Third, defendants' attack on plaintiffs' credibility is without merit. There is no evidence to suggest that A Record, United, or their respective owners have raised an "unnecessary and vulnerable issue of ... credibility in which the ultimate interest of the purported class should not be subjected." *Cf. Kline v. Wolf,* 88 F.R.D. 696, 700 (S.D.N.Y.1981). United's allegation that CBS and Warner have retaliated against

---

4. Defendants attempt to reargue the fraudulent concealment issue now under the "predominance" requirement instead of the "typicality" requirement. The Court's September 30, 1983 Order held that the named representatives' claims are typical of both class members suing within the limitations period and class members relying upon fraudulent concealment allegations. *United National Records v. MCA, Inc.,* 99 F.R.D. 178, 181–82 (N.D.Ill.1983). In any event, plaintiffs have also satisfied their burden of showing that the common issue of liability will predominate over individual issues arising from the fraudulent concealment allegations at trial.

5. Defendants are highly critical of the active role plaintiffs' attorneys are taking in this litigation, especially in drafting discovery responses and preparing their clients for depositions. Defendants' concerns, however, are apparently common in complex antitrust litigation. *See, e.g., Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 41 (E.D.Va.1981). Although this Court is obviously sensitive to any danger that counsel in an antitrust case may act in its own self-interest and not in the best interest of the class, there has been no evidence presented in this case that any such danger exists.

United does not constitute an "unique defense" and it is doubtful that this issue will "divert attention from the substance of the basic claim [at trial]." *Id.* Defendants' contentions regarding George Powell (president of plaintiff GeoTina) are irrelevant since neither Powell nor GeoTina are class representatives in this litigation.

■ Finally, defendants argue that A Record cannot adequately represent class members which challenge defendants' returns policies because A Record stopped making direct purchases in 1977, three years *before* defendants' returns policies were changed. Even assuming, however, that A Record was not directly affected by the change in returns policies, this "missing claim" does not render A Record an inadequate representative. The gravamen of plaintiffs' complaints is twofold: horizontal price fixing and a conspiracy to restrict terms of returning records for credit. While United was affected by both alleged agreements, A Record apparently was affected only by the former. It is not necessary, however, that "each and every issue be raised by each and every member of the class or class representatives...." *Vulcan Society v. Fire Dept. of White Plains,* 82 F.R.D. 379, 401 (S.D.N.Y.1979). As indicated *supra,* further subdivision or severance of issues may be necessary if individual issues predominate concerning defendants' returns policies. There is, however, no basis in the present record to separate the returns policies claim from the price fixing claim. Although the claims are different, they are not inconsistent. Generally, the interests of A Record and United are "essentially coextensive with those of the other class members." *Id.*

### 2. *Typicality, Antagonism and Conflicts of Interest*

■ Defendants argue that retailers and subdistributors (both members of the class

as defined) have adverse interests in this litigation and therefore cannot properly be represented by two retailers in a class action suit. Specifically, defendants contend that if the plaintiffs' allegations regarding defendants' returns policies are true, subdistributors would have benefited from such a practice. Defendants therefore conclude that A Record and United (as retailers), with a strong interest in pursuing the returns policies claim, cannot adequately represent subdistributors, which, according to defendants, have an interest in *not* pursuing the returns policies claim.

The Court is obviously concerned with any suggestion that the interests of the class representatives may conflict with other members of the class. Although subdistributors may opt out of the class under Rule 23(c)(2), such a substantial number of class members opting out would essentially defeat the utility of litigating these cases as a class action. At least pending further discovery into the structure of the industry, however, the alleged antagonism is merely potential.[6] Although it is conceivable that subdividing the class may be necessary before trial, no justification presently exists to deny certification. *See* Manual For Complex Litigation, § 1.42, at 33 (4th ed. 1977). At this juncture, A Record and United have demonstrated that they will adequately protect the interests of the class as presently defined. Therefore, no grounds presently exist to deny class certification on the bases of inadequacy of representation or typicality. *See In re South Central States Bakery Products Antitrust Litigation,* 86 F.R.D. 407, 415–19 (M.D.La.1980); *In re Fine Paper Antitrust Litigation,* 82 F.R.D. 143, 150–51 (E.D.Pa.1979), *appeal dismissed,* 617 F.2d 22 (3d Cir.1980).[7]

### C. *Superiority of Class Action*

■ Defendants argue that individual actions would be "far superior to a massive

---

6. The Manual For Complex Litigation recommends that a court determine whether subclasses are appropriate only after reliable economic data on the structure and practices of the industry are part of the record. Manual For Complex Litigation § 1.42, at 32 (4th ed. 1977).

7. Even assuming that defendants' contentions regarding the structure of the industry are true, it is difficult to envision that the retail class representatives will not adequately protect the interests of both subdistributors and retailers at trial. According to defendants, retailers (including A Record and United) have an interest

class action" in this litigation. Defendants' Memorandum, filed Dec. 8, 1983, at 101. Defendants contend that plaintiffs' individual claims are "sufficiently large" to provide "sufficient incentive for the named plaintiffs ... to pursue their suits individually." *Id.* at 102–03. Requiring each class member to establish defendants' liability at separate trials, however, would constitute a gross waste of the Court's and the parties' time and effort. Although some plaintiffs may have sizable damage claims, there is an overriding need to remedy a common legal grievance. Where such a need exists, and where a class action would achieve economies of time, effort, and expense, the class action device is superior to other forms of litigation even where individual claims are large. *Bryan v. Amrep Corp.,* 429 F.Supp. 313, 318 (S.D.N.Y.1977). In these cases, plaintiffs have satisfied their burden under Rule 23(b)(3) that a class action is superior to other available methods of litigation. *See generally* 3B Moore's Federal Practice, *supra,* ¶ 23.46, at 23–404 (arguing that courts have been overly hostile to class actions brought by franchisees and dealers by unrealistic evaluation of the "superiority" of individual actions).

### III. CONCLUSION

Defendants' motion to vacate class certification is denied. Liaison counsel for the parties shall confer and attempt to agree upon a proposed form of notice, consistent with the requirements of Rule 23(c)(2). In the unlikely event that the parties are unable to agree upon a proposed form of notice, liaison counsel shall submit to this Court their proposed forms of notice, together with supporting memoranda addressing areas of substantive dispute on or before April 4, 1984.

IT IS SO ORDERED.

in pursuing the price fixing and returns policies claims while wholesalers would desire only to press the price fixing claims. Although the named representatives may have an interest in pursuing an additional theory of liability, it

does not automatically follow that the named representatives would not vigorously litigate the price fixing claim which is apparently common to both subdistributors and retailers.