**In re RECORDS AND TAPES ANTITRUST LITIGATION.**

No. 82 C 7589.

United States District Court, N.D. Illinois, E.D.

Dec. 31, 1987.

Jerald P. Esrick, James D. Fiffer, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Jon P. Parrington, Pustorino, Pederson, Tilton & Parrington, Minneapolis, Minn., for Pickwick Intern., Inc., and Sam Goody, Inc.

Michael J. Freed, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., Guido Saveri, Saveri & Saveri, San Francisco, Cal., James B. Sloan, Sloan and Associates, P.C., Granvil I. Specks, Specks & Goldberg, Chicago, Ill., for Records and Tapes Admin. Committee.

## ORDER

BUA, District Judge.

Claimants Pickwick International, Inc., and Sam Goody, Inc., object to the Records and Tapes Administration Committee's recommendation that their claims to settlement proceeds be disallowed. For the reasons stated herein, this court adopts the Committee's recommendation with respect to Pickwick International, Inc., but rejects the Committee's recommendation with regard to Sam Goody, Inc.

## I. FACTS

In 1982, plaintiff wholesalers and retailers of phonographic records and pre-recorded magnetic tapes ("records and tapes") filed an antitrust action against various manufacturers of records and tapes alleging the manufacturers entered into a horizontal price fixing scheme in violation of Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act. 15 U.S.C. §§ 1, 15, 26. On September 30, 1983, this court granted plaintiffs' motion for class certification and defined the plaintiff class as follows:

> All persons, firms and corporations in the United States which during the period January 1, 1971 to December 31, 1982, purchased for resale any phonograph records or pre-recorded magnetic tapes from any defendant, or any subsidiary or affiliate thereof, excluding: (a) defendants in all related cases and other manufacturers of records or tapes, their respective subsidiaries and affiliates, and (b) any purchases from any defendant, or any subsidiary or affiliate thereof, of records or tapes on a mail order basis as a member of a record or tape club.

*United National Records, Inc., v. MCA, Inc.,* 99 F.R.D. 178, 179 (N.D.Ill.1983).

After the entry of that order, the parties entered into a settlement whereby certain defendant manufacturers agreed to pay the plaintiff class a sum in excess of $26 million. The Records and Tapes Administration Committee ("Committee") was formed to administer the disbursement of proceeds from the resulting settlement fund to plaintiff class members. Among those claiming membership in the plaintiff class are Pickwick International, Inc., ("Pickwick") and Sam Goody, Inc., ("Goody"). After conducting a hearing on the claims of Pickwick (Claim No. 197) and Goody (Claim No. 196), the Committee recommended that both parties' claims be disallowed in full. The Committee rejected Pickwick's claim because it operated a record manufacturing subsidiary during the relevant class period. Goody's claim was denied on the ground that it became an affiliate of a record manufacturer when it was purchased in 1978 by American Can Company, the same corporation that owned Pickwick. Since the order certifying the class action excluded all parties that were manufacturers or affiliates of manufacturers of records and tapes, the Committee concluded that Pick-

wick and Goody were not members of the plaintiff class and were thus not entitled to share in the settlement proceeds.

## II. DISCUSSION

### A. *Discretion of the Committee*

■ Although the Committee possesses substantial discretion in administering the claims of purported class members to the settlement proceeds, equity places certain limitations on this discretion. *Gendron v. Shastina Properties, Inc.*, 578 F.2d 1313, 1316 (9th Cir.1978). When a settlement committee abuses its discretion, the district court is required to reject the settlement committee's recommendations and order appropriate remedial action. *Id.* Thus, the issue before this court is whether the Committee abused its discretion in recommending Pickwick and Goody's claims be disallowed.

### B. *Pickwick Claim*

Pickwick challenges the Committee's recommendation asserting that the Committee abused its discretion when it interpreted the class certification order to exclude Pickwick from the plaintiff class on the ground that it owned a subsidiary which manufactured records and tapes during the class period. First, Pickwick argues that because its record manufacturing subsidiary only generated a small percentage of Pickwick's gross sales and only produced budget priced recordings which purportedly did not compete with the records and tapes sold by the named defendants, characterizing Pickwick as a manufacturer and excluding it from the plaintiff class would lead to an inequitable and undesirable result. Pickwick asserts that since no actual antagonism exists between it and other class members, adopting an interpretation of the certification order excluding Pickwick would be inconsistent with the policies underlying class action litigation and the spirit of this court's certification order. Pickwick also contends that it has been the subject of disparate treatment by the Committee. In support of this contention, Pickwick notes that payments to other class members who maintained record manufac-

turing subsidiaries or affiliates were recommended by the Committee and approved by this court. Pickwick also asserts a certain Committee member who had also served as plaintiffs' class counsel led Pickwick to believe that it was a member of the plaintiff class and then, without relying on any previously unknown facts, unexpectedly persuaded the Committee to determine Pickwick was not part of the class entitled to relief. In light of the underlying purpose of certification order and the previous readings adopted by the Committee, Pickwick urges this court to construe the certification order to include purchasers of records and tapes for resale who also maintained *de minimis* manufacturing operations.

■ Examining the language of the certification order, the Committee's rationale for recommending the disallowance of the Pickwick claim becomes clear. The order unequivocally states that the plaintiff class includes all purchasers of records or tapes for resale between 1971 and 1982 except manufacturers of records or tape, and their respective subsidiaries and affiliates. *United National Records, Inc.*, 99 F.R.D. at 179. The facts adduced at the hearings before the Committee showed that Pickwick maintained a subsidiary which manufactured records and tapes during the entire class period. Applying the plain language of the certification order to the facts surrounding the Pickwick claim, the Committee correctly determined that Pickwick did not qualify as a member of the plaintiff class.

Although this court realizes that Pickwick's record manufacturing subsidiary never accounted for more than 4% of Pickwick's gross sales and that Pickwick is probably the single largest potential claimant to the settlement proceeds, Pickwick asks this court to adopt an unreasonable construction of the certification order. Irrespective of whether Pickwick's subsidiary produced records which competed with the majority of records manufactured by the named defendants or whether any actual antagonism exists between Pickwick and members of the plaintiff class, Pickwick

does not fall within the class certified by this court.

Pickwick became a part of this litigation when its subsidiary was named as a defendant co-conspirator in a related antitrust suit filed in January 1983. *See GeoTina Corp. v. ABC Records, Inc., et al.*, No. 83 C 414 (N.D.Ill. January 21, 1983).[1] Although Pickwick's subsidiary was subsequently dismissed from the action without prejudice and GeoTina opted to become a member of the plaintiff class after certification was granted, Pickwick has been privy to developments in this case long before certification order issued. Yet, Pickwick took no steps to ensure its membership in the plaintiff class before or after the certification order issued. Pickwick never contacted plaintiffs' counsel for assurances that it would be included in the class of purchasers for which certification would be sought. Notwithstanding the fact that the plain language of the September 3, 1983 certification order excluded affiliates of manufacturers like Pickwick, at no time did Pickwick attempt to intervene and seek an amendment to the certification order to include purchasers with *de minimis* manufacturing operations.

██ Pickwick contends that forcing it to institute its own antitrust action would conflict with the policies underlying class litigation. As no reasonable construction of the order could include Pickwick by virtue of its manufacturing subsidiary, Pickwick's policy arguments must be viewed as an attempt to gain alteration of the certification order. Rule 23(c)(1), however, allows alteration or amendment to a certification order only "before a decision on the merits." Fed.R.Civ.P. 23(c)(1). Settlement occurred and a plan of distribution was approved in this case over two years ago. Thus, Pickwick's policy arguments are undercut by the fact that Rule 23(c)(1) pre-

vents this court from granting the relief it seeks.[2]

Pickwick also argues that the Committee exhibited bias in processing its claim. Pickwick cites three instances where claims of purported class members were allowed by the committee notwithstanding the fact the purchasers were allegedly affiliated with record manufacturers. Pickwick also points to certain alleged statements by a member of the Committee which assertedly led Pickwick to believe its manufacturing operations would not preclude its class membership.

Pickwick first notes the claim of Transcontinent Record Sales, Inc., (Claim No. 267). Citing Dunn and Bradstreet reports, Pickwick observes that Transcontinent and Amherst Records, Inc., a record and tape manufacturer, are owned by the same individual and share the same corporate address and officers. Notwithstanding Transcontinent's affiliation with Amherst, Pickwick notes that the Committee approved a settlement distribution to Transcontinent in excess of $430,000. Next, Pickwick contends that the $15 million claim of Time–Life Records, Inc., (Claim No. 414) was approved though Time–Life was a manufacturer of records and tapes. Apparently, Time–Life entered into licensing agreements with certain record manufacturers for the production of recordings which Time–Life sold to the public by mail. Because the licensing agreements involving Time–Life are similar to the licensing agreements which Pickwick's subsidiary employed in obtaining the rights to manufacture and sell its recordings, Pickwick asserts that Time–Life must also be deemed a manufacturer. Pickwick also argues that the Committee's approval of the claim of Outlet Book Company, Inc., (Claim No. 203) is incompatible with the Committee's disallowance of Pickwick's claim. Pickwick contends that although the Com-

1. On February 4, 1983, Pickwick, by its counsel Maslon, Edelman, Borman & Brand, Minneapolis, Minnesota and John E. Burke of Ross & Hardies, Chicago, Illinois, filed an answer to the GeoTina complaint.

2. Even if this court were to construe Pickwick's present objections as a motion to intervene, a similar result would be reached since, after settlement, such motions are rarely found timely under Fed.R.Civ.P. 24. *See In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500–01 (3d Cir.1982).

mittee was aware that Outlet owned a record manufacturing company, the Committee recommended that a substantial portion of Outlet's claim be allowed.

■ Responding to Pickwick's contentions, the Committee asserts that a careful examination of its actions regarding each of the foregoing claims reveals no evidence that Pickwick's claim was treated disparately. This court agrees. The Committee correctly points out that Transcontinent's claim form indicated it was not a manufacturer or affiliate of a manufacturer of records and tapes. If Transcontinent is in fact an affiliate of Amherst Records, the Committee suggests the proper action is to seek return of sums improperly paid, not recommend further unauthorized disbursements. With regard to the Time–Life claim, the Committee notes that unlike Pickwick's subsidiary, Time–Life never manufactured records. Instead, Time–Life contracted to purchase certain record and tape products manufactured by RCA Records, Inc., which acquired the rights to produce such recordings from third parties. As such, the operations of Time–Life and Pickwick differ substantially. Finally, the Committee observes that Outlet Book Company's claim was initially rejected because of its relation with Murry Hill Records, Inc., a manufacturing subsidiary. Upon resubmission of the Outlet claim, the Committee determined that at least 48 months existed during the class period when Outlet was not affiliated with any manufacturing operations. Accordingly, the Committee recommended and this court approved a reduced claim which reflected Outlet's purchases during nonmanufacturing periods. As Pickwick maintained its affiliation with Pickwick Records, Inc., throughout the entire class period, the Committee's recommendations regarding the two claims are consistent. As such, this court is unable to agree that the Committee treated Pickwick's claim disparately.

■ Pickwick's final assertions of Committee bias stem from conversations between Pickwick attorneys and members of plaintiffs' class counsel occurring in June and July of 1984. Messrs. Cochrane and Specks, who were serving as plaintiffs' class counsel, allegedly told Pickwick attorneys at these meetings that they considered Pickwick to be a putative class member. Cochrane and Specks allegedly maintained this opinion despite the fact that Pickwick attorneys disclosed Pickwick's affiliation with its manufacturing subsidiary. When Pickwick's attorneys recounted the 1984 conversations at the Committee hearings, Mr. Specks, now a member of that Committee, vigorously denied any such representations were made. Thereafter, to Pickwick's surprise, the Committee voted to disallow Pickwick's claim. Based on the foregoing, Pickwick suggests the Committee's recommendation may have been influenced by bias.

Pickwick's contentions of surprise and possible bias are undercut by the fact that on July 12, 1985, in response to Pickwick's inquiry regarding its membership in the class, Committee member James Sloan sent a letter to Pickwick's counsel stating Pickwick was not a member because it manufactured records and tapes. Yet, no action was taken by Pickwick to intervene and establish its membership in the plaintiff class. Irrespective of whether certain members of class counsel led Pickwick to believe it was a class member, Pickwick failed to take appropriate steps to ensure its inclusion in this litigation. No amount of fingerpointing can change this conclusion. As such, this court is unable to find the Committee abused its discretion in recommending Pickwick's claim be denied and therefore orders Claim No. 197 be disallowed in full.

### C. *Goody Claim*

Goody's objections to the Committee's recommendation mirror Pickwick's arguments with one exception. Goody asserts that the Committee's actions regarding its claim and that of Outlet Book Company, Inc., (Claim No. 203) cannot be reconciled. This court agrees.

■ The record makes clear that both Goody and Outlet were neither manufacturers nor affiliates of manufacturers for a substantial portion of the class period. By reviewing the records of Outlet, the Com-

mittee determined that at least 48 months existed when Outlet was not related to any manufacturing operations. Based on this conclusion, the Committee recommended allowance of a claim for the 48–month period, and this court approved the Committee's recommendation. The transcript of the hearings before the Committee reveals that the Committee was apprised of the fact that Goody's only affiliation with any manufacturers of records and tapes occured in 1978 when it was purchased by Pickwick's parent company, American Can Company. From 1971 until its buyout in 1978, Goody stood in the same shoes as Outlet. Yet, without offering any justifiable reason for distinguishing its action regarding the Outlet claim, the Committee recommended Goody's claim be disallowed in full. Because this court believes the previously adopted reading of the certification order including such purchasers as Outlet is proper, this court finds the Committee's recommendation regarding Goody's claim cannot stand. As such, the Committee is ordered to consider Goody's claim for class membership prior to the time it became an affiliate of Pickwick Records, Inc. in 1978.

## III. CONCLUSION

For the foregoing reasons, this court concludes that the Committee did not abuse its discretion in recommending the disallowance of Pickwick's claim (Claim No. 197) in light of the fact that Pickwick's wholly-owned subsidiary manufactured records and tapes during the entire class period. Thus, the Committee's recommendation with regard to Claim No. 197 is adopted. However, the Committee abused its discretion in recommending that the claim of Goody (Claim No. 196) be disallowed in full. Accordingly, the Committee's recommendation regarding Claim No. 196 is rejected. The Committee is ordered to consider Goody's claim for class membership for all periods during which Goody was not a manufacturer or affiliate of a manufacturer of records and tapes.

IT IS SO ORDERED.